UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 28, 2018

SEAN F. McAVOY, CLERK

| | |
|---|---|
| CHRISTOPHER M., | No. 1:17-CV-00364-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 16, 20. Attorney Dana Chris Madsen represents Christopher M. (Plaintiff); Special Assistant United States Attorney Jeffrey R. McClain represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 13. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Defendant's Motion for Summary Judgment; **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

Supplemental Security Income (SSI) on October 22, 2013 and August 7, 2014, respectively. Tr. 80, 143. Plaintiff alleged disability since October 14, 2013, Tr. 140, 142, due to type 1 diabetes and head trauma. Tr. 169. The DIB application was denied initially and upon reconsideration. Tr. 99-101, 103-104. The SSI application was expedited to the hearing level following filing. Tr. 242, 244. Administrative Law Judge (ALJ) R.J. Payne held a hearing on March 9, 2016 and heard testimony from Plaintiff, medical expert Irvin Belzer, M.D., and vocational expert, Thomas Polsin. Tr. 36-79. The ALJ issued an unfavorable decision on March 30, 2016. Tr. 21-30. The Appeals Council denied review on August 30, 2017. Tr. 1-6. The ALJ's March 30, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on October 27, 2017. ECF Nos. 1, 4 .

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 41 years old at the alleged date of onset. Tr. 140. He has a high school education. Tr. 170  His reported work history includes the jobs of assistant manager in sales and maintenance in sales. Tr. 170, 198. Plaintiff reported that he stopped working on October 14, 2013 due to his conditions. Tr. 169.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of

"disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 30, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 14, 2013, the alleged date of onset. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: diabetes type I with some neuropathy and a thyroid nodule. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a full range of medium work, stating that Plaintiff "can frequently lift and/or carry twenty-five pounds. The claimant can lift 50 pounds occasionally and lift 25 pounds frequently; would have no limitations in sitting, standing and walking; and would have no non-exertional physical limitations." Tr. 24. The ALJ identified Plaintiff's past relevant work as store laborer and storage facility rental clerk and concluded that Plaintiff was able to perform this past relevant work. Tr. 28.

As an alternative to denying the claim at step four, the ALJ determined at step five that, considering Plaintiff's age, education, work experience and residual functional capacity that a finding of "not disabled" would be directed by Medical-Vocational Rule 203.28. Tr. 29. He additionally found that, based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of small parts assembler, hand packager, and final assembler. Tr. 29. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 14, 2013, through the date of the ALJ's

decision. Tr. 30.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical source opinions and (2) failing to properly address Plaintiff's symptom statements. Additionally, the Plaintiff argues that these errors are harmful and a remand for an immediate award of benefits is warranted. ECF No. 16.

**DISCUSSION**[1]

**1. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by treating physician Adam Lyko, M.D. ECF No. 16 at 11-14.

On May 22, 2014, Dr. Lyko stated that Plaintiff had "type 1 diabetes mellitus with brittle control which has resulted in his inability to work. He has had a difficult time maintaining normal sugar levels and is prone to low and high sugar swings which affects his ability to work. I support his current disability application." Tr. 381, 387, 472.

On April 28, 2015, Dr. Lyko completed a form regarding the forgiveness of the Plaintiff's federal student loans. Tr. 485. He stated that Plaintiff had the following:

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

> a medically determinable physical or mental impairment that (a) prevents the applicant from engaging in any substantial gainful activity, in any field of work, and (b) can be expected to result in death, or has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months.

*Id.* He stated that Plaintiff's diagnosis was diabetes mellitus type 1 and described it as "brittle diabetes, uncontrolled sugars, history of hypoglycemia." *Id.*

On January 26, 2016, Dr. Lyko stated "[m]y impression is that he is disabled because of the brittle nature of his type 1 diabetes. My impression is that his ability to be able to work is limited by his diabetic condition." Tr. 544.

The ALJ assigned partial weight to Dr. Lyko's assessments, for five reasons: (1) the opinions were unsupported by treatment records showing that Plaintiff's blood sugar levels remained under good control without severe lows; (2) Plaintiff had declined an insulin pump; (3) the opinions were inconsistent with the medical expert's testimony; (4) the April 2015 assessment was performed for the purpose of student debt discharge and not Social Security Benefits; and (5) no other doctor had indicated that Plaintiff could not perform work at the sedentary, light, or medium levels. Tr. 27.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.

*Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Plaintiff fails to assert which standard applies to the ALJ's reasons for rejecting the opinions. ECF No. 16 at 11-14. Defendant asserts that Dr. Lyko's opinions are contradicted by the medical expert, Dr. Belzer's opinion, and the ALJ is only required to provide specific and legitimate reasons for not adopting the opinions. ECF No. 20 at 3-4. The Court concludes that the ALJ erred in his treatment of the opinions. The reasons the ALJ provided were not supported by substantial evidence and did not meet the lessor standard of specific and legitimate.

The ALJ's first reason for not adopting Dr. Lyko's opinions, that the opinions were unsupported by treatment records, is not supported by substantial evidence. Inconsistency with the objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195. The ALJ stated that "treatment records as of April 2014 stated the claimant's blood sugar levels remained under good control without any severe lows," and that "[a] treatment record from Dr. Lyko, from May 22, 2014, the same dates as one of the letters, stated the claimant's diabetes symptoms had improved somewhat. He did not alter his doses but instead discussed better ways of preventing lows." Tr. 27. The April 24, 2014 visit cited by the ALJ includes a glucose log showing his levels from April 19 to April 24 ranging from 83 to 291. Tr. 375. However, under the

Impressions and Recommendations Dr. Lyko wrote "[s]ugar control has worsened. My impression is he had a honeymoon period last year which has ended and he has become more brittle. He has not been able to work because of his diabetes. He needs more insulin. . ." Tr. 378. This conclusion by the treating physician fails to support the ALJ's conclusion that "sugar levels remained under good control." Tr. 27. Likewise, the May 22, 2014 treatment record cited by the ALJ includes a glucose log from May 12 to May 22 showing a range of 54 to 344. Tr. 423. The Impression and Recommendation states "[s]ugar control remains labile but is slightly better on average than previously. I will not change his doses but discussed ways of preventing lows. He has labile type 1 diabetes and is not able to work." Tr. 426. The Patient Instructions section states "[y]our diabetes has improved but remains not optimally controlled. You have a brittle form of diabetes and are very sensitive to insulin and carbohydrate intake." *Id*. Here, the citations to the record the ALJ relied upon to support his conclusion do not actually support it. The ALJ appears to be interpreting the medical evidence instead of relying on the physician's interpretation of the evidence, which is unacceptable. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (the ALJ "must be careful not to succumb to the temptation to play doctor"). Therefore, the ALJ's assertion is not supported by substantial evidence.

The ALJ's second reason for not adopting Dr. Lyko's opinions, that Plaintiff had declined an insulin pump, is not specific and legitimate. Plaintiff asserts that there is no evidence in the record that the insulin pump would better manage Plaintiff's condition. ECF No. 16 at 12. Defendant argues that "[w]ere Plaintiff's symptoms as severe as Dr. Lyko believed, it is reasonable to presume Plaintiff would have explored all treatment options available to him." ECF No. 20 at 5. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, the treatment

must be prescribed by the treating physician and the treatment must be clearly expected to restore the capacity to engage in any substantial gainful activity. S.S.R. 82-59.[2]

On July 28, 2015, Dr. Lyko stated "I discussed management options including insulin pump therapy which [he] is not interested in at the moment." Tr. 523. Under Patient Instructions, Dr. Lyko wrote, "[a]n insulin pump would likely help improve the control." *Id*. Again, on January 26, 2016, Dr. Lyko wrote that "[p]atient is not interested in insulin pump at this time." Tr. 541. Nowhere in the record does Dr. Lyko, or any other treating provider, prescribe the use of an insulin pump. The only evidence that an insulin pump would improve Plaintiff's symptoms is the instructions to Plaintiff stating that one "would likely help improve the control." Tr. 523. This does not show that a pump was prescribed or that the pump was clearly expected to return Plaintiff to an ability to perform substantial gainful activity. An improvement in control of symptoms does not necessary equate to an improvement in functional ability to the point a claimant can return to and succeed in competitive employment. As such, the ALJ's reliance on Plaintiff's refusal to use an insulin pump is not legally sufficient to reject Dr. Lyko's opinions.

The ALJ's third reason for assigning only partial weight to Dr. Lyko's opinions, that they were inconsistent with the medical expert's testimony, is not specific and legitimate. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an

---

[2]S.S.R. 82-59 was rescinded on October 29, 2018 and replaced with S.S.R. 18-3p. At the time of the decision, the S.S.R. 82-59 was in effect. Additionally, S.S.R. 18-3p echoes the need for an expectation that treatment be prescribed and that the treatment would restore the claimant's ability to engage in substantial gainful activity.

examining physician or a treating physician." *Lester*, 81 F.3d at 831. At the hearing, Dr. Belzer stated that Plaintiff's primary diagnosis was type I diabetes, Tr. 40-41, with an isoecho nodule in his right thyroid that did not meet the criteria for aspiration, Tr. 43. He found that Plaintiff's impairments did not meet or equal a listing, Tr. 44, and opined that Plaintiff retained the residual functional capacity to maintain medium work with no nonexertional limitations, Tr. 45. Considering none of the other reasons the ALJ provided for assigning only partial weight to Dr. Lyko's opinion meet the specific and legitimate standard, this reason alone is insufficient under *Lester* to support the ALJ's determination.[3]

The ALJ's fourth reason for assigning only partial weight to the April 2015 opinion, that it was performed for the purpose of student debt discharge, is not specific and legitimate. The ALJ stated that "the April 2015 assessment was performed for the purposes of student loan discharge, which is not necessarily consistent with Social Security Administration disability standards." Tr. 27. The Ninth Circuit has found that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998).

Defendant argues that the decisions of other governmental organizations regarding a claimant's disability does not necessarily equate with disability under Social Security's rules. ECF No. 20 at 6 (citing 20 C.F.R. §§ 404.1504, 416.904). However, Dr. Lyko's opinion represented on the form is not the decision of a governmental organization, but an opinion from a treating physician regarding

---

[3]The Court notes that Plaintiff submitted his blood sugar readings and these were exhibited in the "E" section. Tr. 267-79. It is unclear if Dr. Lyko reviewed records from the "E" section in forming his opinion. Tr. 40 (confirming that he received an electronic record "with exhibits through 11-F").

Plaintiff's functional abilities. Tr. 485. The regulations require every medical opinion to be evaluated, regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Therefore, this reason is not specific and legitimate.

The ALJ's fifth reason for assigning only partial weight to Dr. Lyko's opinions, that no other doctor had indicated that Plaintiff could not perform work at the sedentary, light, or medium levels, is not specific and legitimate. Dr. Lyko is one of just a few providers who examined Plaintiff after his alleged onset date. Besides Dr. Lyko, Plaintiff was seen one time by Dr. Woolf, Tr. 478-80, one time by E. David Hurtley, M.D., Tr. 480-82, and three times by the nurse practitioner in Dr. Lyko's office, Jennifer Jones, ARNP, Tr. 593-96, 504-12. Additionally, Plaintiff saw an eye doctor and a registered dietitian for diabetes education. Tr. 497-500, 527-31. None of these providers prepared any functional opinion. The Court refuses to accept the ALJ's insinuation that the lack of a medical opinion equates to a lack of limitations.

The only other opinions in the evidence come from nonexamining sources: Dr. Belzer at the hearing, Tr. 39-48, and Howard Platter, M.D., at the reconsideration level, Tr. 93-95. As discussed above, the opinions of nonexamining providers alone are not substantial evidence to support the rejection of a treating physician. *Lester*, 81 F.3d at 831. Therefore, without more than a reference to the opinions from the nonexertional sources in the record, the ALJ's reason falls short of the specific and legitimate standard.

This case is to be remanded for the ALJ to properly address the opinions of Dr. Lyko.

**2. Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that his symptom statements were not entirely consistent with the evidence. ECF No. 16 at 15-17.

It is generally the province of the ALJ to make credibility determinations regarding a claimant's symptom statements, *Andrews*, 53 F.3d at 1039, but the

ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence. Tr. 25. The ALJ provided four reasons for his determination: (1) Plaintiff's statements were not supported by the objective medical evidence; (2) Plaintiff's symptoms were inconsistent with his reported activities; (3) Plaintiff did not know why he was fired from his prior job; and (4) Plaintiff applied for and received unemployment benefits. Tr. 25-27.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that they were inconsistent with the objective medical evidence, is not specific, clear and convincing. Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ found that the record demonstrated that Plaintiff's symptoms were controlled and improving. Tr. 25-26. However, the ALJ failed to state with specificity how the evidence of improvement was inconsistent with Plaintiff's reported symptoms. *Id*. Therefore, this fails to meet the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that they were inconsistent with his reported activities, is not specific, clear and convincing. A claimant's daily activities may support an adverse credibility

finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. The ALJ found that Plaintiff's activities of checking his blood sugar levels, preparing meals, housework, going outside daily, and shopping in stores as inconsistent with Plaintiff's reported symptoms. Tr. 26. First, the ALJ failed to state how these activities were inconsistent with his reported symptoms. *Id*. Second, that Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). As such, this reason is not specific, clear and convincing.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that he did not know why he was fired from his last job, is specific, clear and convincing. An ALJ may rely on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant's statements not entirely credible. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ found that Plaintiff's testimony regarding why he left his prior employment was unsupported in the record. Tr. 26-27. At his hearing, Plaintiff testified that he thought he was let go from his prior employment, ending October 14, 2013, due to the need to use the restroom frequently, but he had no proof. Tr. 53. The ALJ found this inconsistent with Plaintiff denying frequent urination on exams on July 24, 2014, April 28, 2015, July 28, 2015, October 27, 2015, and January 26, 2016. Tr. 27. While it is questionable for the ALJ to rely on evidence of Plaintiff's

symptoms from 2014 and forward when he last worked in 2013, a review of the evidence from 2013 supports the ALJ's overall conclusion that Plaintiff failed to report excessive urination as a symptom to his providers. Tr. 339, 348, 360. The complaint of frequent urination first appears in the record on April 24, 2014 when he reports to Dr. Lyko that he was fired in October of 2013 for needing to urinate frequently. Tr. 375. However, on May 22, 2014, Plaintiff again denied excessive urination. Tr. 424. As such, this reason meets the specific, clear and convincing standard. However, considering this case has been remanded for the ALJ to properly address Dr. Lyko's opinions, he will also make a new credibility determination.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that he applied for and received unemployment benefits, is not specific, clear and convincing. The receipt of unemployment benefits can support an ALJ's adverse determination regarding his symptom statements; however, there must be evidence to support that the claimant held himself out as ready, willing, and able to work full-time. *Carmickle*, 533 F.3d at 1161-62. Here, Plaintiff received unemployment benefits in the first two quarters of 2014. Tr. 160. However, the ALJ has pointed to no evidence that Plaintiff held himself out as ready, willing, and able to work full-time in his receipt of these benefits. Tr. 27. Therefore, this reason is not specific, clear and convincing.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, since the case is being remanded for the ALJ to properly address Dr. Lyko's opinions, a new assessment of Plaintiff's subjective symptom statements is necessary.

## REMEDY

Plaintiff argues that the ALJ's errors were harmful and the appropriate remedy is a remand for an immediate award of benefits. ECF No. 16 at 17-18.

The Court agrees that the ALJ's treatment of Dr. Lyko's opinion was a harmful error. However, the Court finds that the appropriate remedy is to remand for additional proceedings.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. While Dr. Lyko's opinions are clear in that he considered Plaintiff's impairments to preclude work, the opinions are not clear as to how Plaintiff's symptoms result in functional limitations that can be reflected in a residual functional capacity that was presented to the vocational expert at the hearing. Further proceedings are necessary for the ALJ to properly address Dr. Lyko's opinions and to properly address Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding medical evidence, including Plaintiff's glucose monitor readings, if available. At remand proceedings the ALJ will call a medical expert to review the

medical evidence, including Plaintiff's glucose monitor readings, and testify at the hearing.  Likewise, the ALJ will call a vocational expert to testify at the hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED December 28, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE